UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**TERRANCE EDWARDS,**

    **Plaintiff,**

    v.                                                Case No. 10-CV-729

**BELINDA SCHRUBBE, MARY GORSKE,**
**DR. PAUL SUMNICHT, KRIS LYONS,**

    **Defendants.**

## DECISION AND ORDER

    Plaintiff, a Wisconsin state prisoner, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 and was granted leave to proceed in forma pauperis. He claims that defendants were deliberately indifferent to his serious medical need in that they failed to treat his vitiligo skin condition, in violation of the Eighth Amendment to the United States Constitution. On September 6, 2011, I denied defendants' motion for summary judgment for failure to exhaust administrative remedies. I subsequently requested an attorney to represent plaintiff and in October 2011, Attorney Joseph W. Seifert agreed to represent plaintiff pro bono. Now before me is defendants' motion for summary judgment, which will be addressed herein.

### I. STANDARD OF REVIEW

    "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A.,

Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## II. FACTUAL BACKGROUND

Plaintiff was incarcerated at Waupun Correctional Institution (WCI) at all times relevant. He has a skin condition called vitiligo, which is an incurable condition in which there is a loss of pigment from areas of skin, resulting in irregular white patches that feel like normal skin. Defendant Belinda Schrubbe is the Health Services Manager in the Health Services Unit (HSU) at WCI. Defendants Mary Gorske and Kris Lyon were nurse practitioners at WCI at all relevant times. Defendant Dr. Paul Lyons is a treating physician at WCI.

On December 17, 2007, plaintiff was seen by a nurse in the HSU for complaints of white patches of skin on his arms and legs. The nurse, who documented numerous spots where there was no pigment on both his arms and upper legs, referred him to a nurse practitioner. Plaintiff met with Nurse Practitioner (NP) Gorske on January 10, 2008, who determined he had vitiligo and ordered a blood test to rule out an autoimmune disorder. She explained the condition to him and told him it is mostly untreatable. On January 28, 2008, plaintiff requested clarification of his condition and a nurse informed him he would have a follow-up appointment with NP Gorske once his lab results came back. Plaintiff's lab results came back normal and on February 7, 2008, he had his follow-up appointment with NP Gorske. Plaintiff requested a specific test for vitiligo. She told him there was no specific test, and gave him a handout on his condition.

On June 18, 2008, plaintiff complained to security staff that he believed he was being poisoned, which was causing his vitiligo. He had been seen on June 9, 2008, for an unrelated matter and did not make any such claims. Also, on July 7, 2008, NP Gorske followed-up with plaintiff regarding an unrelated issue, who did not mention possible poisoning or vitiligo.

NP Gorske conducted plaintiff's annual physical on February 6, 2009. She noted vitiligo was present, skin warm, dry and intact, and "good skin turgor." Plaintiff did not make any HSU requests regarding vitiligo in 2009.

On February 9, 2010, plaintiff expressed concern to HSU that his vitiligo was spreading and was referred back to NP Gorske. At his appointment on February 16, 2010,

3

plaintiff requested Psoralen[1] to treat the condition. NP Gorske informed him that treatment is not medically necessary because vitiligo is not life-threatening or a serious illness. She gave him Lobana lotion, a non-prescription moisturizer, to apply to the affected areas, and referred him to the doctor.

Defendant Dr. Sumnicht examined plaintiff on March 15, 2010. He ordered multiple lab tests to rule out an acute immune problem. Results of lab work, including plaintiff's level thyroid stimulating hormone and level of B12, were normal. Consequently, Dr. Sumnicht told plaintiff that there was no medical indication that his vitiligo needed to be treated because the effects of the condition were purely cosmetic.

On July 6, 2010, defendant NP Lyon saw plaintiff after he complained that his vitiligo was spreading. She educated him on the condition and provided him a pamphlet from the Mayo Clinic on vitiligo. Dr. Sumnicht met with plaintiff on August 2, 2010, to answer additional questions about vitiligo and other issues.

Defendant Schrubbe did not personally treat plaintiff nor did she have any personal involvement with the decisions made regarding his medical care. Plaintiff transferred to New Lisbon Correctional Institution on March 29, 2011.

### III. ANALYSIS

Defendants contend that vitiligo is not an objectively serious medical condition and that, even if it were, they were not deliberately indifferent towards plaintiff's skin condition. Plaintiff contends that his vitiligo is a serious medical condition and that defendants acted with deliberate indifference toward the condition.

---

[1]Psoralen is a phototoxic drug used by topical or oral administration for the treatment of vitiligo and psoriasis. <u>Stedmans Medical Dictionary</u> 1593 (28th ed. 2006).

"The Eighth Amendment safeguards the prisoner against a lack of medical care that may result in pain and suffering which no one suggests would serve any penological purpose." Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011) (quoting Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 828 (7th Cir. 2009) (internal quotation omitted)). Prison officials violate the Constitution if they are deliberately indifferent to a prisoner's serious medical need. Id. (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)). A prisoner's claim for deliberate indifference must establish "(1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition." Gomez v. Randle, 680 F.3d 859, 865 (7th Cir. 2012) (quoting Arnett, 658 F.3d at 750).

The parties disagree as to whether plaintiff's vitiligo is a serious medical need for Eighth Amendment purposes. According to defendants, vitiligo is not objectively serious because it is not life threatening and does not carry a risk of serious impairment if left untreated. Defendants cite to Hudgins v. DeBruyn, 922 F. Supp. 144, 148 (S.D. Ind. 1996), a § 1983 prisoner case where the district court assumed that vitiligo was not a serious medical need. In that case, the court described vitiligo as a medical condition which warrants "treatment" for "cosmetic purposes or purposes of convenience or comfort" and compared vitiligo with "occasional indigestion or constipation, dandruff, acne, . . ., chapped lips, dry hands, most headaches, most colds (uncomplicated with fever or purulent mucous production),and muscle ache from exertion." Id.

Plaintiff contends that, in his situation, vitiligo is a serious medical need. He asserts that he has repeatedly registered deep distress over his spreading condition and that his distress includes "concern over his increasingly stigmatizing appearance and its impact upon his future employability and social functioning upon release from the prison system;

his increased and ever increasing susceptibility to skin cancers due to the loss of protective pigmentation; [and] his inability to partake of full outdoor recreation afforded other prisoners as a result of his sensitivity to the sun." (Pl.'s Resp. Br. at 4.) Plaintiff also contends that Hudgins is distinguishable because it is not controlling precedent and because the inmate in that case had asthma.

"A medical need is considered sufficiently serious if the inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011) (internal quotation marks and punctuation omitted). The medical condition need not be life-threatening; "it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." Id. (quoting Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010)). In this case, defendants determined that plaintiff's vitiligo was not a serious medical condition and was essentially untreatable. Moreover, there is no indication that plaintiff suffered any physical pain or injury from the condition. In short, the facts do not support a finding that vitiligo is a serious medical need.

Even if vitiligo were a serious medical need, defendants were not deliberately indifferent. To demonstrate deliberate indifference, a plaintiff must show that defendants "acted with a sufficiently culpable state of mind," something akin to recklessness. Arnett, 658 F.3d at 751 (quoting Johnson v. Snyder, 444 F.3d 579, 585 (7th Cir. 2006)). A prison official acts with a sufficiently culpable state of mind when he or she knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Id. (citing Roe, 631 F.3d at 857). Deliberate indifference "is more than negligence and approaches intentional wrongdoing." Id. (quoting Collignon v. Milwaukee Cnty., 163 F.3d 982, 988 (7th

6

Cir. 1998)). It "is not medical malpractice; the Eighth Amendment does not codify common law torts." Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008). "A jury can infer deliberate indifference on the basis of a physician's treatment decision [when] the decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." Arnett, 658 F.3d at 751 (quoting Duckworth, 532 F.3d at 679) (quotation marks omitted). A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that "no minimally competent professional would have so responded under those circumstances." Roe, 631 F.3d at 857 (quotation marks omitted).

Here, when plaintiff complained about his condition, he was seen in the HSU by medical professionals. Both NP Gorske and Dr. Sumnicht tested plaintiff to rule out immune disorders and then spoke with him about his condition. And while plaintiff was not given the medication he requested because it was determined to not be medically necessary, he was given Lobana lotion and referred to a doctor. Plaintiff has not submitted evidence that defendants' responses to his questions about his vitiligo were so inadequate that they showed an absence of professional judgment. The record does not support a finding that any defendant acted with deliberate indifference.

## IV. ADDITIONAL MATTERS

Plaintiff has filed a motion to compel his attorney to send him copies of his response to defendants' motion for summary judgment for his records. Plaintiff has also filed a motion that the court inform him directly on any decision in this case because of communication problems with his attorney. Lastly, plaintiff has filed a motion to have his

7

attorney send him a copy of defendants' September 18, 2012, reply brief for his records. All of these motions will be denied. However, the clerk of court will be instructed to send copies of this decision, plaintiff's response to defendants' motion for summary judgment, and defendants' reply brief directly to the plaintiff.

## V. CONCLUSION

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment (Docket #52) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to compel (Docket #81), plaintiff's motion to inform plaintiff directly of court decision (Docket #89), plaintiff's motion for order for copies (Docket #93) are **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mail directly to plaintiff copies of this decision, plaintiff's response to defendants' motion for summary judgment, and defendants' reply brief.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 10th day of January, 2013.

                                                  s/ Lynn Adelman
                                                  _____
                                                  LYNN ADELMAN
                                                  District Judge